JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from judgments of conviction and sentencing entered by Judge Nancy A. Fuerst. Ernest McCauley challenges both the validity of his jury waiver and the evidence used to convict him on a charge of having a weapon while under a disability,[1] and the consecutive sentences imposed after his guilty pleas to tampering with evidence[2] and obstruction of justice[3] in a separate but related case. We affirm the conviction, affirm the sentences in part, vacate the sentences in part, and remand for correction of journal entries.
 {¶ 2} On March 23, 2001, Marcus Blalock shot and killed Howard Rose during a meeting for a drug transaction. This occurred at the home of Arketa Willis, Rose's friend and sometime lover, who had introduced the pair. When Rose did not meet Ms. Willis at her workplace after the meeting, she called Blalock to inquire about Rose's whereabouts. Blalock told her to come to her home and, when she arrived, she discovered Blalock, McCauley, and Dion Johnson there, along with Rose's corpse. Blalock admitted that he shot Rose and the four attempted to cover up the crime, which included cleaning up the blood in the Willis home and disposing of Rose's body and his pickup truck. They drove the truck to Pennsylvania, where they set it on fire with the body inside.
 {¶ 3} Police in Pennsylvania and Ohio eventually traced the crime to Blalock, McCauley, Johnson, and Ms. Willis, and all four were indicted in Case No. CR-407194 on charges of aggravated murder,[4]
kidnapping,[5] and aggravated robbery,[6] and McCauley also was charged with having a weapon while under a disability. In Case No. CR-407947, all four were charged with tampering with evidence and obstruction of justice in connection with the cover up of the murder. Although the cases were consolidated for pretrial purposes, the judge granted McCauley's motions to hold separate trials on the two indictments and to sever his trials from those of the other defendants. McCauley also executed a waiver of jury trial with respect to the weapon charge and asked that the judge render a verdict on that count.
 {¶ 4} The judge directed a verdict of acquittal on the aggravated murder, kidnapping, and aggravated robbery charges against McCauley, but entered a guilty verdict on the weapon charge. McCauley then entered guilty pleas to the tampering and obstruction charges and the judge held a combined sentencing hearing on the convictions for the three offenses. McCauley was sentenced to four years each on the tampering and obstruction convictions and twelve months for having a weapon while under a disability, all sentences to run consecutively, and he was fined $10,000.
 I. JURY WAIVER {¶ 5} Under R.C. 2945.05, the waiver of a trial by jury "shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof." Without strict compliance with these provisions a judge lacks jurisdiction to hold a non-jury trial.[7]
However, where these requirements are followed and the judge acknowledges and accepts the written waiver on the record, there is no need to further interrogate the defendant to establish the waiver's voluntariness.[8]
McCauley does not deny executing the waiver, but claims it is invalid because it was not made a part of the record.
 {¶ 6} The State filed a motion to supplement the record to include the waiver, and the panel reviewing that motion initially denied it, but then entered a sua sponte order overruling its previous order and granting the State's motion to supplement.[9] Nevertheless, the motion is moot because the signed waiver is included in the original trial record. Therefore, we overrule the first assignment of error because there is no violation of R.C. 2945.05 or Pless.
 II. EVIDENCE OF POSSESSING A WEAPON {¶ 7} McCauley claims in his second and third assignments of error that the evidence was insufficient to show the weapon belonged to him and, even if he did possess the weapon at one time, there was no evidence to show he had it on March 23, 2001, as alleged in the indictment. We address a sufficiency challenge to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[10] A sufficiency challenge presents a question of law and does not allow the reviewing court to weigh the evidence.[11]
 {¶ 8} McCauley stipulated to a prior conviction that subjected him to the firearm prohibition of R.C. 2923.13, but claims the judge erred in accepting his accomplices' testimony that the gun belonged to him. Johnson testified that McCauley admitted owning the gun, and Ms. Willis testified that McCauley asserted control over the weapon when he ordered Blalock to clean it after the killing. Johnson's testimony concerning McCauley's admission is sufficient to establish both his ownership of the gun and his actual or constructive possession of it on March 23, 2001, and Ms. Willis's testimony is at least consistent with that conclusion.
 {¶ 9} Although McCauley claims that an accomplice's testimony, standing alone, is insufficient to sustain a conviction, he has provided no authority or rationale for that conclusion and we are aware of none currently applicable. An accomplice's testimony is subject to scrutiny with respect to its weight, but it is admissible.[12] Therefore, if the factfinder chooses to believe an accomplice's testimony the issue remains one of weight and not sufficiency. Because the testimony concerning McCauley's admission of ownership was sufficient to allow a guilty verdict on the indictment as charged, the second and third assignments are overruled.
 III. SENTENCING {¶ 10} McCauley's fourth and fifth assignments challenge the sentencing proceedings on the basis that the judge considered improper evidence and that the record does not support consecutive prison terms. Although the rules of evidence do not apply to sentencing hearings and the judge may consider any reliable evidence in the record,[13] it is inappropriate to sentence a defendant for an offense that has not been charged or proven.[14] The judge noted that McCauley's history included a number of prior convictions, as well as arrests that did not result in charges and charges that were filed but did not result in convictions. She also noted that he had recently served a federal prison term and was on supervised release from that offense when he committed the crimes in this case.
 {¶ 11} McCauley claims that the mere mention of uncharged arrests and charges without conviction requires resentencing. However, in stating her conclusions with respect to his criminal history, the judge found only that he had "an extensive history of criminal convictions" as well as a record showing violations of probation or other conditions of release. These are legitimate findings on the facts presented, but there is no evidence the judge used uncharged or unproven offenses in imposing sentence. Furthermore, although she discussed a prior arrest for murder in more detail, she expressly stated that she was not considering whether he was guilty of that crime, but that it showed his understanding of the seriousness of the offenses in this case. Therefore, we do not find that the sentence was based on any improper inferences from uncharged or unproven offenses.
 {¶ 12} McCauley asserts that his aggregate nine-year prison term was disproportionate to the offenses given to similar offenders because his codefendant, Ms. Willis, received a prison term of only four years. R.C. 2929.11 requires a judge to consider proportionality factors in sentencing,[15] and McCauley could obtain relief if he could show that the record does not support his prison term because a co-defendant received a lighter sentence from the same judge despite the fact that her conduct was clearly more serious than his.[16] He has failed, however, to establish that the judge was clearly wrong in finding that his conduct was more culpable than that of Ms. Willis.
 {¶ 13} She testified that McCauley took a lead role in the efforts to clean up the crime scene and dispose of Rose's body, and the record does not convince us that the judge erred in accepting this testimony. Moreover, the judge found that McCauley's record of criminal convictions presented a greater risk of recidivism, which aids in distinguishing his circumstances from those of Ms. Willis. Finally, although the judge remarked that she "heard two trials" in connection with Rose's killing, we do not find that she considered evidence introduced during the separate trial of the co-defendants when sentencing McCauley. Her comment was an isolated response to McCauley's protests concerning the sentence and there is no indication that she considered evidence outside the record in imposing it. We overrule the fourth and fifth assignments of error.
 IV. MONETARY FINE {¶ 14} The judge imposed a $10,000 fine as part of the sentence for tampering with evidence and obstruction of justice. McCauley claimed to be indigent, and R.C. 2929.19(B)(6) requires a judge to consider "the offender's present and future ability to pay" before imposing a fine. At the sentencing hearing the judge stated she would reconsider McCauley's claim of indigence after receipt of documentation supporting it. Six days later McCauley's affidavit was filed in both cases. Eighteen days later, a journal entry imposing the fine was filed in the tampering/obstruction case. On December 3, 2001, seventeen days later, the judge found McCauley indigent and assigned the Public Defender for appeal of the weapon count in the kidnapping/murder case.
 {¶ 15} The judge found McCauley indigent for purposes of appeal on the weapon charge and, even though a similar entry was not in the record of the appeal on the tampering/obstruction charges, the finding indicates that she believed he had established his present inability to pay any fine.[17] Such a finding is consistent with the record because McCauley presented evidence that he had no cash or assets, that he had failed to make mortgage payments on his home for over two years, and that the home was in the midst of foreclosure proceedings.
 {¶ 16} Even though the judge found that McCauley was indigent at the time of sentencing, she could still impose a fine if she found that he would be able to pay the fine in the future.[18] However, under the facts of this case, the imposition of a nine-year prison term prevents any reasonable finding that McCauley, who is presently unable to pay a fine, will be able to pay it in the foreseeable future.[19] The record clearly and convincingly shows that imposing a $10,000 fine was an error.
 {¶ 17} Contrary to the dissent's argument, the judge's finding that McCauley was employed at a rate of $7.50 per hour prior to his offenses does not rebut his showing of indigence, even if one could forecast a similar earning ability nine years hence. A full-time wage of $7.50 per hour yields a gross income of $15,600 per year, assuming the employee also earns benefits allowing him to be paid for sick time, holidays, and vacation time. From this amount the employee must pay all applicable taxes and secure the essentials of a reasonable existence, such as food, clothing, shelter, transportation, and health care. Imposing a fine as an extra burden upon one earning this little virtually assures an overpowering temptation to earn more money unlawfully, substantially decreasing any chance the offender might have of avoiding recidivism. Fines should be imposed as punishment upon those with the ability to pay.
 {¶ 18} We need not remand this case for resentencing however, because we can order the judge to vacate the fine.[20] We note, however, that the journal entries in both cases purport to impose post-release control "for the maximum period allowed" even though McCauley was never advised at the sentencing hearing of post-release control or the available penalties should he violate such terms. Not only is the journal entry erroneous because it attempts to impose post-release control under circumstances where its imposition is discretionary with the parole board,[21] post-release control cannot be imposed in the journal entry when the judge failed to comport with the mandates of R.C.2929.19(B)(3) at the sentencing hearing.[22] Therefore, post-release control is not part of McCauley's sentence. The sixth assignment of error is sustained.
 {¶ 19} The judge is ordered to correct McCauley's sentencing in Case No. CR-407194 to reflect that post-release control is not part of his sentence, and in Case No. CR-407947 to reflect that neither a fine nor post-release control are part of his sentence.
 {¶ 20} The conviction in Case No. CR-407194 is affirmed, the sentences are affirmed in part and vacated in part in accordance with this opinion and the cases remanded for correction of the journal entries.
DIANE KARPINSKI, J., CONCURS
FRANK D. CELEBREZZE, JR., J., CONCURS WITH ASSIGNMENTS OF ERROR ONE THROUGH FIVE, DISSENTS ON ASSIGNMENT OF ERROR SIX (SEE SEPARATE OPINION ATTACHED)
[1] R.C. 2923.13, a fifth degree felony.
[2] R.C. 2921.12, a third degree felony.
[3] R.C. 2921.32, a third degree felony.
[4] R.C. 2903.01.
[5] R.C. 2905.01.
[6] R.C. 2911.01.
[7] State v. Pless, 74 Ohio St.3d 333, 1996-Ohio-102, 658 N.E.2d 766, paragraph one of the syllabus.
[8] State v. Spivey (1998), 81 Ohio St.3d 405, 408-409,692 N.E.2d 151.
[9] Motion No. 347503, dated April 3, 2003.
[10] (Emphasis sic.) State v. Stallings, 89 Ohio St.3d 280, 289,2000-Ohio-164, 731 N.E.2d 159 (quoting Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560).
[11] State v. Martin (1983), 20 Ohio App. 172, 175, 20 OBR 415,485 N.E.2d 717, 720.
[12] R.C. 2923.03(D).
[13] Evid.R. 101(C); State v. Cook, 83 Ohio St.3d 404, 425,1998-Ohio-291, 700 N.E.2d 570.
[14] State v. Longo (1982), 4 Ohio App.3d 136, 141, 4 OBR 228,446 N.E.2d 1145.
[15] State v. Lyons, Cuyahoga App. No. 80220, 2002-Ohio-3424, at ¶ 30.
[16] R.C. 2953.08(G)(2).
[17] State v. Gipson, 80 Ohio St.3d 626, 635, 1998-Ohio-659,687 N.E.2d 750. Although this case is subject to the standards of proof stated in R.C. 2953.08 rather than R.C. 2929.18(B)(1), the standards concerning waiver of mandatory fines are instructive here.
[18] Id. at 636.
[19] Id. at 635, citing State v. Pendleton (1995), 104 Ohio App.3d 785,787-788, 663 N.E.2d 395, State v. Lefever (1993), 91 Ohio App.3d 301,309, 632 N.E.2d 589, and State v. Gutierrez (1994), 95 Ohio App.3d 414,418, 642 N.E.2d 674.
[20] R.C. 2953.08.
[21] R.C. 2967.28(C); State v. Brown, Cuyahoga App. No. 80725, 2002-Ohio-5468, at ¶ 24.
[22] Crim.R. 43(A); Woods v. Telb, 89 Ohio St.3d 504, 2000-Ohio-171,733 N.E.2d 1103.